Case No. 15-5200 David Patchak, Appellant v. Sally Jewell in her official capacity as Secretary of the United States Department of the Interior at Elle Ms. Eubanks for the Appellant, Mr. McBadden for the Appellee Good morning, Your Honors. May it please the Court, my name is Sharon Eubanks and I represent David Patchak. I'd like to begin the argument this morning addressing the 28-J submission that was made by the government regarding the Bank-Marcazi v. Peterson case which was decided by the Supreme Court on the 20th of April. Basically, to facilitate the collection of judgments, and this is in the Marcazi case, obtained from victims of Iran-sponsored terrorism, Congress enacted a particular statute making bond assets subject to execution in order to satisfy judgments. That was Section 8772, and it was a consolidated enforcement proceeding. Bank-Marcazi, the central bank of Iran, actually argued that that was violative of separation of powers doctrine. In its decision, the Supreme Court found that it was not. The government cites to that case saying that it's dispositive of the claims that Mr. Patchak makes regarding separation of powers, and I'm here to distinguish that case for you. Bank-Marcazi involved a new legal standard that applied to a set of undisputed facts. The statute covered a category of post-judgment execution claims filed by numerous plaintiffs who, in multiple civil actions, obtained evidence-based judgments against Iran. Now, there is a material dispute in the Patchak case. In Patchak, the question as to whether federal jurisdiction and federal recognition are the same thing is a hotly disputed question. In Patchak, the question of compliance with the Supreme Court's decision in Carcieri that it is a requirement in order to take land into trust for a tribe, that the tribe must be under federal jurisdiction is something that was raised initially in 2008 when Mr. Patchak filed his original complaint. Ms. Eubanks, I think the stronger point of analogy with the Bank-Marcazi case is subsection A of the statute, which doesn't speak to the treatment of the trust lands under the IRA, but is a separate congressional taking into trust of the land. It's, in effect, saying one of the things that Congress can do is, just by new legislation, take land into trust and so they're ratifying and confirming what they characterize as having been done before, but it's basically a new basis apart from the Indian Ruralization Act for the trust. And if we are to characterize it that way, the question, I think, is do you have any additional way of distinguishing Bank-Marcazi? Yes, absolutely. In terms of the two sections of the Gun Lake Act, the Gun Lake Act was not an amendment to an existing statute. And that's one of the things that Marcazi does talk about. It talks about the fact that Congress may go ahead and amend a statute and that that consideration is something that gives rise to an ability to be able to make these changes. In terms of distinguishing Klein, what Marcazi talked about was that the court noted that Klein didn't inhibit Congress from taking land into trust. And that's one of the things that Marcazi does talk about. The other thing that Marcazi does talk about is that Congress may go ahead and amend a statute and that's something that gives rise to an ability to be able to make these changes. And that's one of the things that Marcazi talks about. What happened here was the reaffirmation of Indian trust land, the Gun Lake Act, was passed and it simply said that it reaffirmed the trust land. Reaffirming the trust land or reaffirming as trust land the actions of the Secretary being ratified isn't the same thing as saying that the APA is out the window, that the APA is not something that needs to be considered. What Congress did was put the law out there in Part A and Part B and I recognize that the intervener takes the position that, well, we can split this and Part A will survive. It's not at all clear what that would mean and whether Part A should survive because of the ambiguity here regarding what does it mean to ratify the actions of the Secretary and to confirm them. What is clear here is that the no claims provision singled out a single person, David Patchak, with regards to whether he could pursue his lawsuit. And worse than just singling him out, it directed the court as to how to do that. And it says that it shall be promptly dismissed. Now that is another determination that's completely different from the Marcazi case. There was no instruction governing one case only in Marcazi. Again, there were 16 suits and each retained its separate character. The other thing that the court noted in Marcazi was that, as in Klein, the court adopted a couple of really important points here. One, the statute in Klein infringed on the judicial power, not because it left too little for the court to do, but it attempted to direct the result without altering the legal standards governing, in Klein, the effect of a pardon. So, as the court offered in the significance of Klein, as discussed in Marcazi, the court said, Congress may not exercise its authority, including its power to regulate federal jurisdiction, in a way that requires a federal court to act unconstitutionally. And that's the entire point of Mr. Patchak's appeal, that there are a number of constitutional infirmities that exist, and that the powers set forth in, the separation of powers as clarified or addressed in Klein, discussed in the Marcazi decision, does not in any way eradicate the claims that he raises here. In fact, the Marcazi case is helpful because it does make it clear that that was not just one case, and the court goes on to talk about, well, if it had been one case, that would mean something. It was consolidated action. Furthermore, as I said before, it was attached to another statute in an appeal, to make clear what assets would be reachable in these terrorism cases. So, when we look at the plenary power of Congress, it's really not relevant whether the Bradley tract was taken into trust under an improper and capricious exercise of the Secretary of Interior's power, because Congress, the intervener argues here, and the government as well, has a right to exercise its sovereign immunity. I want to distinguish a very important point that is made regarding the APA and that is that because the Gunn-Lake Act itself called out a requirement to kill Mr. Patchak's case, a requirement of dismissal of his case, that that particular action was something that was an APA's general waiver of sovereign immunity was applicable there because it excluded any other decisions that would lead to a dismissal of a lawsuit, or impliedly or expressly forbid the relief that is sought. We should look at the entirety, though, of the statute itself, of the Gunn-Lake Act, because it is not a grant of consent to sue. It is not a waiver of sovereign immunity. In fact, it's just the opposite. It's stating expressly what it is that cannot be done, that the suit may not survive, and that's very different from what the Supreme Court discussed when it heard Mr. Patchak's case itself and found that the Quiet Title Act was inapplicable there. Ms. Eubanks, can I just ask you to pin down for us what property right your client is claiming exactly? Sometimes it seems to me that it's a cause of action, right to use the courts on an unaccrued cause of action, his real property near this casino site. If you could just clarify for us if it's one or all of those things, and in relation to which aspects of your claim. Thank you, Your Honor. I'll certainly try. Mr. Patchak brought his suit in order to protect his interests, originally his interests in real property and his rights to the quiet enjoyment thereof. But in this litigation, he also claims that his lawsuit was a particular property right, particularly after the Supreme Court, who heard the case, made a determination that he had standing to bring that case. He has standing, but as I read the cases, a claim until it accrues, until it actually reaches final judgment, it doesn't have a property status. That we have a lot of law from the Supreme Court and elsewhere telling us that Congress has the power to change governing substantive law in a way that radically diminishes and alters things of value to individuals, and that it can do that when a case is pending. So I'd like to hear more about what you mean by his claim having a property quality. Admittedly, it's a difficult argument to make because the question of finality. He did have a finding specifically allowing him to bring his claim because he had the standing to do that, and he had taken that all the way to the Supreme Court, which is unusual in any instance. I would concede to the Court that it is difficult to make that argument, that that is a final judgment, but our position here is that that determination was something that he had a right to take to its conclusion in a court of law. What that standing meant, and the Supreme Court was clear on this, was only that he could pursue his case, not that he necessarily should win it. And looking at it from that viewpoint, having taken the case all the way to the Supreme Court, we maintain that that is an issue that gives rise to his property right. I also want to touch on another, I think, really important part of his case, and it is the bill of attainder aspect. Although let me stop you right there, because my reading of the bill of attainder cases is that they apply not only to the kind of targeted action that you've identified here, but to targeted action that imposes punishment. And the punishment that the bill of attainder clause refers to, according to the Supreme Court, is punitive, is criminal type punishment, and I don't see that here. This Court's decision in Fortich is directly on point, and in Fortich the Court outlined three different ways that you look at the meaning of what's punitive, and sort of brought it into, if you will, modern day actions. There's a historical context, meaning, you know, that it's legislative punishment in a historical sense, and it goes through some length, and it's obviously a different case, but to look at the facts of what happened in Fortich, and to compare those with what happened in the instant matter, is something that I think is very useful to the Court. In Fortich, the Congress enacted a law that forbade Mr. Fortich from seeing his minor daughter in visitation after he was divorced from his wife, unless the daughter decided that it was okay. And ultimately the mother fled with the daughter overseas, and then Congress enacted the Elizabeth Morgan Act so that she could come home, and he still had a problem though, because it called out specifically him and only him for punishment. He maintained that the fact that the Act was passed, and he could not see his daughter, and he couldn't change the Act, because he testified in Congress before the Act became law, and they tried to bargain with him to get him to take a particular position. But the only punishment that that has was a statute that said that he couldn't undertake a particular action. That's very similar to what we have here. In Fortich, they applied a historical test, a functional test, and a motivational test to make the determination of what constituted punishment for these purposes. One of the things that might involve punishment include disqualification from the pursuits of a lawful advocation, or from positions of trust, or from privilege of appearing in the courts, or as acting as an executor, administrator, or guardian. To be fair, this Court did not say, that's fine, we adopt all of that. They said that's sort of an uphill battle, but in applying the rational connections that they did to the actions, and how they affected Dr. Fortich, I think it's very similar to what we have with respect to Mr. Patchett. All right. Why don't we hear from counsel, roughly. Good morning. Good morning, Your Honors. May it please the Court, my name is Lane McFadden, here on behalf of the United States Department of the Interior. The separation of powers issues raised by Mr. Patchett in this case have been asked to this Court previously, and this Court has answered them already, in both Anteloc and in the National Coalition to Save Our Mall case. In Anteloc, this Court walks through the law dating back to the very beginning of the 19th century, discussing Congress's ability to remove cases or certain types of cases from the jurisdiction of inferior federal courts, and it included, as the Supreme Court has many times, that Congress may do so without violating the Constitution, so long as it does not expand the jurisdiction of the federal courts beyond the outer bounds provided by Article 3 of the Constitution. National Coalition to Save Our Mall applies that rule in a more analogous case. That, too, is a multi-pronged statute, one of which reaffirmed the legality of a previously made agency decision, and another prong of it removed the right to judicial review of that decision from the federal courts. This Court said that is perfectly within Congress's power within Article 3, and as the Court pointed out in that case as well, that's doubly true where you have a situation where the only cause of action and the only waiver of sovereign immunity granted by Congress is found in the APA. This is a case that existed at its outset solely at the grace of Congress, and it is well within Congress's congressional authority to remove that case from the federal courts, and it is done in Subsection B of the Gun Lake Act. Given that Congress may do so, I think the District Court properly dismissed for want of subject matter jurisdiction and didn't have to reach the merits of Mr. Patchak's question about the Secretary's authority, and expressly declined to do so. But as Your Honors, I think, have pointed out in argument here today, Subsection A certainly does speak to those merits, and it sort of, I don't want to say preempts, but it sort of supersedes the initial question of whether the Secretary originally had authority under the Indian Rate Organization Act. So we need to reach the Subsection B issue, the sort of Klein issue, broadly framed, before we reach the Subsection A issue, because the Subsection B issue is the subject matter jurisdiction issue? That's correct, Your Honor. Yes. You have to look at Subsection B first, because it dictates whether Subsection A is even one that this Court can consider. The District Court dismissed for want of jurisdiction under Subsection B, and there's really nothing that's been put forth here today that would suggest that was incorrect. The Supreme Court has spoken to this, obviously, very recently in Bank Markazi, and while the statute there is somewhat different in that it established a new legal standard to apply to specific facts, as counsel has pointed out, that's precisely what the Supreme Court has routinely held Congress may do. If Congress is to violate Klein, it could only do so, and I'm quoting here from Robertson, the Forest Service case in the early 90s, it may not direct any particular findings of fact or applications of law old or new to facts. That is not what Subsection A does, and nor is it what Subsection B does. And so in that sense, it does not violate Klein. In the 140 years since Klein was enacted, the federal courts have yet to find that it invalidated another act of Congress, and this one, too, is far more akin to that one upheld by this Court in the National Coalition to Save the Mall and to the jurisdiction stripping provision at issue in Antelope. The Congress has simply said the suit shall not be maintained in the federal courts, and that is well within its authority both to remove the cause of action under the APA that originally was pled in the complaint and also to define the contours of the Article III jurisdiction of the inferior federal courts. Counsel suggested that the quotation in our brief from Section 702 in the APA is incorrect, and I think there's something to that, but if you look at 702.1 rather than 702.2, 702.1 makes clear that the APA shall have no effect on any other statute precluding judicial review or requiring the courts to perform any other more specific duty, and that is precisely what Subsection B does with some clarity. It is entitled No Claims. It says that claims such as Mr. Patchak's, and he doesn't dispute that he falls within Subsection B, shall not be filed or maintained in the federal courts. There's no ambiguity as to its effect on the jurisdiction of the court, and given that the court lacks jurisdiction, that resolves the matter before you here, I think, without need to engage in any further inquiry. Any questions? No. Thank you. No further comment? The Marcazi decision is controlling notwithstanding counsel's comments about to save our mall. Both, obviously that's a decision of this court, but Marcazi did clarify what the issue was regarding recline. And so far as what this court should do at the end of the day, it should remand with instructions to vacate the motion to strike. That's important here because we're talking about the merits of the action when we look at the support and the administrative record and what the administrative record was supposed to contain. If this court does go, if this case does go back on remand, it's important to look at those issues, and I know that wasn't something that was addressed when I was up here before, but I would urge the court to take a close look at that and the motion to strike, the basis for it, what constitutes the administrative record. Furthermore, there is another action of the secretary regarding two other tracts of land. So, you know, we need not think that this is necessarily going to be the end of this case. There's a six-year statute of limitations under the APA, and with respect to what is to be done there and the current record, that's a different and separate record we maintain from the original record that was before the court that formed the basis on which the decision of the secretary was made. What the government has done here is stuffed into the older record the 2014 decision or clarification of the secretary regarding the carciary decision and placed that before the district court. So I would ask the court to take a close look at that, and that's fully briefed by Mr. Patchak. Thank you very much. Thank you. We'll take the case under advisement.
judges: Rogers, Pillard, Wilkins